1 | AMSTER, ROTHSTEIN & EBENSTEIN LLP
ANTHONY F. LO CICERO, NY SBN1084698
2 | alocicero@arelaw.com
CHESTER ROTHSTEIN, NY SBN2382984
3 | crothstein@arelaw.com
HOLLY PEKOWSKY, NY SBN2776532
4 | hpekowsky@arelaw.com
JESSICA CAPASSO, NY SBN 4766283
5 | jcapasso@arelaw.com
90 Park Avenue
6 | New York, NY 10016
Telephone:   (212) 336-8000
7 | Facsimile:   (212) 336-8001
(*Pro Hac Vice Applications Forthcoming*)

8 |
HANSON BRIDGETT LLP
9 | GARNER K. WENG, SBN191462
gweng@hansonbridgett.com
10 | CHRISTOPHER S. WALTERS, SBN267262
cwalters@hansonbridgett.com
11 | 425 Market Street, 26th Floor
San Francisco, California 94105
12 | Telephone:   (415) 777-3200
Facsimile:   (415) 541-9366

13 |
Attorneys for Plaintiffs MACY'S, INC. and
14 | MACYS.COM, INC.

15 | UNITED STATES DISTRICT COURT

16 | NORTHERN DISTRICT OF CALIFORNIA

17 | SAN FRANCISCO DIVISION

18 |

19 | MACY'S, INC. and MACYS.COM, INC.,    Case No. CV11    6198

20 |          Plaintiffs,    **COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, DILUTION, AND UNFAIR COMPETITION**

21 |     v.

22 | STRATEGIC MARKS, LLC,    **DEMAND FOR JURY TRIAL**

23 |          Defendant.

24 |

25 |

26 | Plaintiffs Macy's, Inc. and Macys.com, Inc. (collectively and individually "Macy's" or

27 | "Plaintiffs"), by their attorneys, for their complaint against Defendant Strategic Marks, LLC

28 | ("Strategic Marks" or "Defendant") allege as follows:

3928385.3

-1-

COMPLAINT

<u>NATURE OF THE ACTION</u>

1.     This is an Action for trademark infringement, false designation of origin, unfair competition, and dilution arising under the Lanham Act, 15 U.S.C. § 1051 et seq., and federal and State common law.  Defendant has willfully and unlawfully infringed the Heritage Marks (as defined below) with the clear and unmistakable intent and effect of causing confusion, mistake, and deception among customers and potential customers.

2.     Macy's is the owner and user of the following world famous marks for retail store and online retail store services, clothing and related products:  ABRAHAM & STRAUS, A&S, THE BROADWAY, JORDAN MARSH, BULLOCK'S, ROBINSONS-MAY, FILENE'S, and THE BON MARCHÉ (collectively and individually, the "Heritage Marks").

3.     The Heritage Marks have been used, *inter alia*, in the following stylized formats (collectively and individually, the "Macy's Famous Stylized Nameplates"):



3928385.3

COMPLAINT

*Bullock's*

# BULLOCK'S

# ROBINSONS·MAY

# FILENE'S 

4.     This Complaint asserts claims against Defendant arising from Defendant's trademark infringement, unfair competition, and dilution of the Heritage Marks and Macy's Famous Stylized Nameplates.

5.     Macy's asks this Court to enjoin the infringement, dilution, and unfair competition caused by Defendant's wrongful activities and to compensate Macy's for the damages which Defendant has caused and the unjust enrichment it has received.

## THE PARTIES

6.     Plaintiff Macy's, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 7 West Seventh Street, Cincinnati, OH 45202 and operates several Macy's department stores within this Judicial District.

7.     Plaintiff Macys.com, Inc. is a corporation organized and existing under the laws of the State of New York with a principal place of business at 685 Market Street, 8th Floor, San Francisco, CA 94105 and operates the online department store www.macys.com.

1    8.    Upon information and belief, Defendant Strategic Marks is a limited liability

2  company organized and existing under the laws of the State of California, with a place of

3  business at 25 Ridgeview, Irvine, CA 92603.

4  JURISDICTION AND VENUE

5    9.    This is an action for trademark infringement, false designation of origin,

6  trademark dilution, and unfair competition arising under the Trademark Act of 1946, 15

7  U.S.C. § 1051 *et. seq.*; trademark infringement, false designation of origin, and unfair

8  competition arising under the common law of the State of California; and statutory dilution

9  and unfair competition under the laws of the State of California.  This Court has

10  jurisdiction over the subject matter of this action under the Trademark Act of 1946, 15

11  U.S.C. § 1121 and the Judicial Code, 28 U.S.C. §§ 1331 and 1338.  This Court has

12  supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, which

13  arise out of the same nucleus of operative fact as the substantial Federal law claims to

14  which they are joined.

15    10.    Defendant Strategic Marks is subject to this Court's personal jurisdiction

16  pursuant to Local Rule 3-5 and Rule 4 of the Federal Rules of Civil Procedure because it

17  does business in this Judicial District, including offering infringing products that contain

18  the Heritage Marks within this State and in this District, and expressly aiming the acts

19  alleged in this Complaint at this District.

20    11.    Venue is proper in this judicial district under 28 U.S.C. § 1391, among other

21  things because the injury caused by the acts alleged in this Complaint was felt in this

22  District.

23  INTRADISTRICT ASSIGNMENT

24    12.    Intradistrict Assignment of this intellectual property action (trademark) is

25  proper on a district-wide basis pursuant to Local Rule 3-2(c) and General Order No. 44.

26  FACTUAL BACKGROUND

27    13.    Macy's, by itself and through related entities and predecessor entities, is a

28  leading operator of retail department stores in the United States.  Macy's operates, *inter*

1  *alia*, numerous MACY'S retail department stores throughout the country, including in this

2  State. Macy's also operates an online retail store at www.macys.com.

3      14.    Macy's is the owner of various retail stores under marks other than

4  MACY'S, including but not limited to the Heritage Marks, which are described as follows:

5      a)    JORDAN MARSH, a prominent New England department store

6  initially located in Boston was founded by Benjamin L. Marsh and Eben Jordan in

7  approximately 1851.

8      b)    BULLOCK'S, a prominent west coast department store initially

9  located in Los Angeles was founded by John G. Bullock in 1907.

10      c)    ROBINSONS-MAY stores from the west coast trace their history

11  back to the opening of the J.W. Robinson Company in 1881.  The Los Angeles-based

12  store catered to an upscale clientele and quickly branched out to multiple locations.

13      d)    FILENE'S, a prominent New England department store initially

14  located in Boston was established in 1852 by William Filene.

15      e)    ABRAHAM & STRAUS, also known as A&S, was founded in

16  Brooklyn in 1893 and quickly grew from a small dry goods shop to a prominent

17  department store.

18      f)    THE BROADWAY, a southwest store, was initially established in Los

19  Angeles in 1896 and transformed into one of the most successful department store

20  chains in Southern California.

21      g)    THE BON MARCHÉ was initially established in Seattle in 1890 and

22  expanded throughout the Northwest becoming a staple in malls and shopping centers.

23      15.    The Heritage Marks, by reason of the high quality retail and other services

24  provided under them and the quality of design and workmanship of the wearing apparel

25  and other goods sold, have come to be known to the purchasing public as representing

26  products and services of the highest quality, which are provided under the best

27  merchandising and customer service conditions.  As a result thereof, the Heritage Marks

28  and the goodwill associated therewith are well-known to the public and of inestimable

3928385.3

-5-

1   value to Macy's.

2       16.    Plaintiff Macy's, Inc. is the owner of, *inter alia*, the following U.S. trademark

3   and service mark registrations for the Heritage Marks (collectively and individually,

4   "Macy's Registrations"):

5             a)    FILENE'S, U.S. Trademark Registration No. 1,960,415, issued

6                   March 5, 1996, for retail department store services.

7             b)    ROBINSONS-MAY, U.S. Trademark Registration No. 1,793,132,

8                   issued September 14, 1993, for retail department store services.

9             c)    MAY, U.S. Trademark Registration No. 1,728,405, issued October

10                   27, 1992, for retail department store services.

11   True and correct copies of Macy's Registrations are attached hereto as Exhibit A.

12       17.    The Heritage Marks, by virtue of their wide renown, have developed a

13   secondary meaning and significance in the minds of the trade and the purchasing public,

14   such that the retail department store services, online retail store services, and related

15   goods and services offered thereunder are immediately identified with Plaintiffs by the

16   purchasing public.

17       18.    Macy's has not abandoned its Heritage Marks.

18       19.    Macy's is using its Heritage Marks in United States commerce, including but

19   not limited to within its Macys.com website.

20       20.    Macy's has taken active, affirmative, and successful steps to retain and

21   foster the goodwill of the Heritage Marks.

22       21.    The relevant consuming public recognizes that the Heritage Marks are

23   trademarks and service marks indicating a single source of origin.

24       22.    With the transition of the Heritage Marks stores, the goodwill in the Heritage

25   Marks transferred to Macy's.

26       23.    Based on the fame of, and existing goodwill in the Heritage Marks for retail

27   department store services, online retail store services, and related goods and services,

28   Defendant seeks to usurp that goodwill and dilute those marks.

1      24.     Long after Plaintiffs' adoption and use of the Heritage Marks for retail

2 department store services, online retail store services, and related goods and services,

3 Defendant applied to federally register marks identical to the Heritage Marks for identical

4 services (the "Infringing Marks").

5      25.     Defendant has applied for the following U.S. registrations for the Infringing

6 Marks:

7            a)      U.S. Trademark Application Serial No. 85137185, filed September

8 24, 2010, for the Infringing Mark ROBINSON'S for, *inter alia*, retail department store and

9 on-line retail department store services.

10            b)      U.S. Trademark Application Serial No. 85137191, filed September

11 24, 2010, for the Infringing Mark THE BROADWAY for, *inter alia*, retail department store

12 and on-line retail department store services.

13            c)      U.S. Trademark Application Serial No. 85137181, filed September

14 24, 2010, for the Infringing Mark MAY COMPANY for, *inter alia*, retail department store

15 and on-line retail department store services.

16            d)      U.S. Trademark Application Serial No. 85137194, filed September

17 24, 2010, for the Infringing Mark ABRAHAM AND STRAUS for, *inter alia*, retail

18 department store and on-line retail department store services.

19            e)      U.S. Trademark Application Serial No. 85137183, filed September

20 24, 2010, for the Infringing Mark JORDAN MARSH for, *inter alia*, retail department store

21 and on-line retail department store services.

22            f)      U.S. Trademark Application Serial No. 85136164, filed September

23 23, 2010, for the Infringing Mark BULLOCK'S DEPARTMENT STORE for, *inter alia*, retail

24 department store and on-line retail department store services.

25            g)      U.S. Trademark Application Serial No. 85137196, filed September

26 24, 2010, for the Infringing Mark FILENE'S for, *inter alia*, retail department store and on-

27 line retail department store services.

28

1            h)      U.S. Trademark Application Serial No. 85137193, filed September

2  24, 2010, for the Infringing Mark THE BON MARCHÉ for, *inter alia*, retail department

3  store and on-line retail department store services.

4      26.     Defendant offers for sale and sells products bearing the Infringing Marks on

5  its website, www.retrodepartmentstores.com, using typestyles which are intentionally

6  identical to those used by Macy's for its corresponding Heritage Marks.  Attached to this

7  Complaint as Exhibit B is a true and correct copy of the home page of Defendant's

8  www.retrodepartmentstores.com website showing use of the Infringing Marks in the

9  infringing typestyles.

10     27.     Defendant's typestyles include but are not limited to the following:









3928385.3

COMPLAINT

*Filene's*

## *Abraham & Straus*

28.     Defendant has indicated its intent to use the Infringing Marks for services which are identical to services Macy's provides - i.e., retail department store services and online retail store services featuring clothing and clothing accessories, cosmetics and fragrances, jewelry and home furnishings.

29.     Defendant has stated that its intention is to use Heritage Marks precisely because they are famous.  Defendant wrote:

> Strategic Mark LLC's goal is to bring back the old shopping experiences and brands you remember.

30.     Defendant has advertised the Infringing Marks using Macy's most iconic historic flagship stores, in an apparent attempt to clothe themselves in the associated goodwill.  Attached to this Complaint as Exhibit C is a representative page from Defendant's www.retrodepartmentstores.com website which advertises BULLOCK'S and shows a movie entitled "Bullock's Wilshire, Los Angeles 1930's", with actual footage of the famous Bullock's location.

31.     The use by Defendant of the Infringing Marks has been willful and without the consent of Macy's.

32.     Defendant has used Macy's actual television commercials to advertise its services.  Exhibits D, E, F, G, and H are pages from Defendant's www.retrodepartmentstores.com website using early television commercials.

33.     Defendant's use of the Infringing Marks is likely to cause confusion and mistake in the minds of the purchasing public, and in particular, tends to and does falsely

3928385.3

-9-

1 | create the impression that Defendant's goods and services are conducted by or in

2 | association with Macy's (e.g., Defendant may have become part of Plaintiffs' store

3 | family).

4 |     34.   Upon information and belief, Defendant was aware of Macy's proprietary

5 | rights in the Heritage Marks before Defendant began using the Infringing Marks.

6 |     35.   Upon information and belief, Defendant is intentionally trying to usurp the

7 | existing and residual goodwill and secondary meaning of the Heritage Marks.

8 | Defendant's web site states:

9
10
11
12 | > Now, through Retro Departmentstores.com, we will bring back nine of the great department stores of the 20th century: Joseph Magnin, Bullock's, May, Robinson's May, Jordan Marsh, Filene's, The Broadway, The BonMarche, and Abraham & Strauss, and re-build and restore these well-loved brands.

13 | *See* Exhibit D attached hereto.

14 | FIRST CLAIM FOR RELIEF

15
16 | INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARKS<br>15 U.S.C. § 1114

17 |     36.   Macy's incorporates by reference as if fully set forth herein the averments

18 | contained within the preceding paragraphs 1 through 35, inclusive.

19 |     37.   Defendant infringes trademarks registered in the United States Patent and

20 | Trademark Office, in violation of the Trademark Act of 1946, 15 U.S.C. § 1051, *et. seq.*,

21 | particularly under 15 U.S.C. § 1114(1).

22 |     38.   Defendant's use of the Infringing Marks is likely to cause confusion and

23 | mistake in the minds of the purchasing public, and in particular, tends to and does falsely

24 | create the impression that Defendant's goods and services are conducted by or in

25 | association with Macy's (e.g., Defendant may have become part of Plaintiffs' store family)

26 | and therefore constitutes a violation of Plaintiffs' registered trademarks within the terms of

27 | Section 32 of the Trademark Act, 15 U.S.C. § 1114.

28 |     39.   Upon information and belief, Defendant's infringement has been willful and

3928385.3

1 | intentional.

2 |     40.    As a direct and proximate result of Defendant's illegal activities as alleged
3 | above, Macy's has been severely damaged. Defendant's acts in infringing Plaintiffs'
4 | Registrations have caused, and will continue to cause, irreparable harm to Plaintiffs
5 | unless enjoined by this Court.

### SECOND CLAIM FOR RELIEF

### FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
### 15 U.S.C. § 1125(a)

9 |     41.    Macy's incorporates by reference as if fully set forth herein the averments
10 | contained within the preceding paragraphs 1 through.40, inclusive.

11 |     42.    This Claim arises under the provisions of the Trademark Act of 1946, 15
12 | U.S.C. § 1051 et. seq., particularly under U.S.C. § 1125(a), and alleges the use in
13 | commerce of false designations of origin and false descriptions and representations.

14 |     43.    Defendant's use of the Infringing Marks is likely to create confusion and to
15 | deceive consumers as to the source of origin, sponsorship and/or authorization of
16 | Defendant's business.

17 |     44.    As more fully set forth above, the Heritage Marks have come to have a
18 | secondary meaning indicative of origin, relationship, sponsorship, and/or association with
19 | Plaintiffs. The purchasing public is likely to mistakenly attribute to Plaintiffs the use by
20 | Defendant of the Infringing Marks as a source of origin, authorization, affiliation, and/or
21 | sponsorship for Defendant's retail department store services, online retail store services,
22 | and related goods and services and, therefore, to use Defendant's services and purchase
23 | Defendant's products in that erroneous belief.

24 |     45.    Defendant's adoption and continued willful use of a mark confusingly similar
25 | to that of Macy's as herein above alleged, constitutes a use in interstate commerce and a
26 | false designation of origin or false and misleading description or representation of goods
27 | and/or services in commerce, with knowledge of the falsity, and deceptive misdescription,
28 | which is likely to cause confusion, mistake and deception, and in commercial advertising

1 and promotion, misrepresents the nature, characteristics, qualities and origin of
2 Defendant's retail department store services, online retail store services, and related
3 goods and services and commercial activities, within the meaning and in violation of 15
4 U.S.C. §1125(a).

5      46.   As a direct and proximate result of Defendant's illegal activities as alleged
6 above, Macy's has been severely damaged. Defendant's aforesaid acts have caused,
7 and will continue to cause, irreparable harm to Macy's unless enjoined by this Court.

8 THIRD CLAIM FOR RELIEF

9 FEDERAL TRADEMARK DILUTION<br>15 U.S.C. § 1125(c)
10

11      47.   Macy's incorporates by reference as if fully set forth herein the averments
12 contained within the preceding paragraphs 1 through 46, inclusive.

13      48.   This Claim arises under the provisions of the Trademark Act of 1946, 15
14 U.S.C. § 1051 et. seq., particularly under 15 U.S.C. § 1125(c), and alleges the
15 commercial use in commerce by Defendant of the Heritage Marks, resulting in dilution
16 thereof.

17      49.   As a result of Macy's extensive advertising and promotional efforts, the
18 Heritage Marks are recognized nationwide by the trade and purchasing public as
19 synonymous with the highest quality goods and services.

20      50.   The Heritage Marks are famous marks that are of inestimable value to
21 Macy's and are relied upon by the trade and the purchasing public to identify and
22 designate Macy's retail department store services, online retail store services, and
23 related goods and services and to distinguish them from the goods and services of
24 others.

25      51.   Defendant's use in commerce of the Infringing Marks is likely to cause
26 dilution of the distinctive quality of the Heritage Marks.

27      52.   Defendant began its use of the Infringing Marks in commerce after the
28 Heritage Marks became famous. Such use of the Infringing Marks commenced recently,

1  in each case many decades after Macy's began use of the corresponding Heritage
2  Marks.

3     53.    Defendant's store services are of inferior quality, and therefore tarnish
4  Macy's goodwill in the Heritage Marks.

5     54.    Upon information and belief, Defendant's commercial use of the Infringing
6  Marks is continuing with the willful intent to trade upon Plaintiffs' reputation and to cause
7  dilution of the Heritage Marks, all to the detriment and damage of Plaintiffs.

8     55.    Defendant's use of the Infringing Marks has caused and/or is likely to cause
9  dilution by blurring and/or dilution by tarnishment of the Heritage Marks.

10    56.    As a direct and proximate result of Defendant's illegal activities as alleged
11  above, Plaintiffs have been severely damaged.  Defendant's aforesaid acts in diluting the
12  Heritage Marks have caused, and will continue to cause, irreparable harm to Plaintiffs
13  unless enjoined by this Court.

14                          FOURTH CLAIM FOR RELIEF

15     COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

16    57.    Macy's incorporates by reference as if fully set forth herein the averments
17  contained within the preceding paragraphs 1 through 56, inclusive.

18    58.    This Claim arises under the common law of the State of California and
19  alleges willful and intentional common law trademark infringement and unfair competition
20  by Defendant.

21    59.    As more fully alleged above, the use by Defendant of the Infringing Marks
22  constitutes passing off, unfair methods of competition, unconscionable acts and
23  practices, and unfair and deceptive acts and practices wherein Defendant's conduct is
24  likely to cause confusion in the trade as to the source of Defendant's department store
25  services, online retail store services, related goods and services and/or is likely to lead
26  the public to believe that Defendant and its department store services, online retail store
27  services, and related goods and services are in some way connected with Plaintiffs
28  when, in fact, they are not, all to the detriment of Plaintiffs and in violation of the common

3928385.3

-13-

1  law of the State of California.

2      60.    As a direct and proximate result of Defendant's illegal activities as alleged

3  above, Plaintiffs have been severely damaged. Defendant's aforesaid acts of unfair

4  competition have caused, and will continue to cause, irreparable harm to Plaintiffs unless

5  enjoined by this Court.

## FIFTH CLAIM FOR RELIEF

### STATE STATUTORY DILUTION
California Business and Professions Code § 14247

9      61.    Macy's incorporates by reference as if fully set forth herein the averments

10  contained within the preceding paragraphs 1 through 60, inclusive.

11      62.    The above-described acts and conduct by Defendant—including without

12  limitation its use of the Infringing Marks—are likely to injure the reputation of Macy's and

13  dilute the distinctive quality of its famous marks in violation of Section 14247 of the

14  California Business & Professions Code.

15      63.    By reason of these wrongful acts and conduct Defendant, Macy's has

16  suffered and will suffer damage. Additionally, these wrongful acts and omissions by

17  Defendant have caused, and unless restrained and enjoined by this Court will continue to

18  cause, serious irreparable injury and damage to Macy's, the goodwill associated with its

19  marks, and to the public. Macy's is therefore entitled to injunctive relief, as requested in

20  this action.

## SIXTH CLAIM FOR RELIEF

### STATE STATUTORY UNFAIR COMPETITION
California Business and Professions Code § 17200 et seq.

24      64.    Macy's incorporates by reference as if fully set forth herein the averments

25  contained within the preceding paragraphs 1 through 63, inclusive.

26      65.    This Claim arises under California Business and Professions Code § 17200

27  et seq. and alleges willful and intentional unfair competition by Defendant.

28      66.    As more fully alleged above, Defendant's acts and conduct as alleged

3928385.3

-14-

COMPLAINT

1  above also constitute "unlawful, unfair, or fraudulent business act[s] or practice[s] and

2  unfair, deceptive, untrue, or misleading advertising" within the meaning of California

3  Business and Professions Code § 17200 et seq.  Defendant's acts and conduct are

4  wrongful, knowing, willing, and malicious and constitute unfair competition under

5  California State law.

6      67.    As a direct and proximate result of Defendant's illegal activities as alleged

7  above, Plaintiffs have been severely damaged. Defendant's aforesaid acts of unfair

8  competition have caused, and will continue to cause, irreparable harm to Plaintiffs unless

9  enjoined by this Court.

10  PRAYER FOR RELIEF

11      WHEREFORE, Plaintiffs demand judgment as follows:

12      1.    That a preliminary and permanent injunction be issued enjoining Defendant

13  and its agents, servants, employees, attorneys, and all persons in active concert or

14  participation with them:

15      (a)    from using the Heritage Marks or any marks confusingly similar

16      thereto in connection with sale or offering of goods and services;

17      (b)    from using any logo, trade name, trademark, or service mark, which

18      may be calculated to falsely represent or which has the effect of

19      falsely representing that goods and/or services of Defendant are

20      sponsored by, authorized by or in any way associated with Plaintiffs;

21      (c)    from using the Infringing Marks or from otherwise infringing or

22      diluting the Heritage Marks; and

23      (d)    from otherwise unfairly competing with Plaintiffs or infringing

24      Plaintiffs' rights in and to the Heritage Marks.

25      2.    That Defendant be required to remove from use any interior and exterior

26  signage, web sites, in-store display, business cards, mailers, and any other physical or

27  electronic advertisements, collateral, or promotional materials bearing the Infringing

28  Marks.

3928385.3

-15-

1       3.     That Defendant be enjoined from any use of the Infringing Marks on goods

2   which are offered for sale or sold.

3       4.     That Defendant be required to pay to Plaintiffs such damages as Plaintiffs

4   have sustained as a consequence of Defendant's unfair competition and infringement of

5   Plaintiffs' registered and common law Heritage Marks, and to account to Plaintiffs for all

6   gains, profits and advantages derived by Defendant by virtue of its infringement, and/or

7   that Plaintiffs be awarded Defendant's profits pursuant to 15 U.S.C. § 1117 and state

8   common and statutory law.

9       5.     That the monetary award to Plaintiffs be increased based on willful

10   infringement pursuant to 15 U.S.C. § 1117.

11       6.     That the Court find that the circumstances of the case merit an award of

12   damages to Plaintiffs in the amount of three (3) times the amount found as actual

13   damages, as specifically provided in 15 U.S.C. § 1117.

14       7.     That the Court find this case to be exceptional and award reasonable

15   attorneys' fees to the Plaintiffs.

16       8.     For such other and further relief as to the Court may deem just and proper

17   under the circumstances.

18

19   DATED: December _9_, 2011          HANSON BRIDGETT LLP

20

21                      By:_____

22                         GARNER K. WENG

23                         CHRISTOPHER S. WALTERS
                             Attorneys for Plaintiffs MACY'S, INC. and

24                         MACYS.COM, INC.

25

26

27

28

3928385.3

COMPLAINT

1

<u>DEMAND FOR JURY TRIAL</u>

2        Plaintiffs Macy's, Inc. and Macys.com, Inc. hereby demand a trial by jury of all

3    claims so triable.

4    DATED: December  9 , 2011                HANSON BRIDGETT LLP

5

6                                            By: _____

7                                               GARNER K. WENG
                                                CHRISTOPHER S. WALTERS
8                                               Attorneys for Plaintiffs MACY'S, INC. and
                                                MACYS.COM, INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3928385.3

COMPLAINT

# EXHIBIT A

Int. Cl.: 42

Prior U.S. Cls.: 100 and 101

## United States Patent and Trademark Office

Reg. No. 1,960,415
Registered Mar. 5, 1996

### SERVICE MARK
### PRINCIPAL REGISTER

### FILENE'S

MAY DEPARTMENT STORES COMPANY, THE
(NEW YORK CORPORATION)
611 OLIVE STREET, STE. 1750
ST. LOUIS, MO 63101

FOR: RETAIL DEPARTMENT STORE SERV-
ICES, IN CLASS 42 (U.S. CLS. 100 AND 101).
FIRST USE 5-6-1894; IN COMMERCE
5-6-1894.

OWNER OF U.S. REG. NOS. 124,527, 1,517,257
AND OTHERS.

SER. NO. 74–668,816, FILED 5-1-1995.

RUDY R. SINGLETON, EXAMINING ATTOR-
NEY

Int. Cl.: 42

Prior U.S. Cl.: 101

## United States Patent and Trademark Office

Reg. No. 1,793,132
Registered Sep. 14, 1993

### SERVICE MARK
**PRINCIPAL REGISTER**

## ROBINSONS-MAY

MAY DEPARTMENT STORES COMPANY, THE
(NEW YORK CORPORATION)
611 OLIVE STREET
ST. LOUIS, MO 63101

FOR: RETAIL DEPARTMENT STORE SERV-
ICES, IN CLASS 42 (U.S. CL. 101).

FIRST USE 1–31–1993; IN COMMERCE
1–31–1993.

SER. NO. 74–355,439, FILED 2–4–1993.

ERIN FALK, EXAMINING ATTORNEY

Int. Cl.: 42

Prior U.S. Cl.: 101

## United States Patent and Trademark Office

Reg. No. 1,728,405
Registered Oct. 27, 1992

### SERVICE MARK
### PRINCIPAL REGISTER

## MAY COMPANY

MAY DEPARTMENT STORES COMPANY, THE (NEW YORK CORPORATION)
611 OLIVE STREET, SUITE 1750
ST. LOUIS, MO 63101

   FOR: RETAIL DEPARTMENT STORE SERV-ICES, IN CLASS 42 (U.S. CL. 101).
   FIRST USE 7–7–1899; IN COMMERCE 7–7–1899.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "COMPANY", APART FROM THE MARK AS SHOWN.

SER. NO. 74–186,035, FILED 7–18–1991.

SUSAN LEE, EXAMINING ATTORNEY

# EXHIBIT B



# *Retro*
## DEPARTMENT STORES

### CLICK TO ENTER

A&S
BROADWAY   Jordan Marsh   Ballard's

MAY COMPANY   JOSEPH MAGNIN   FILENE'S   *The* BON MARCHÉ

*Bringing back all the old department stores you remember and loved.*

Strategic Mark LLC's goal is to bring back the old shopping experiences and brands you remember.
Look for a really cool shopping experience coming soon that will bring back choice, selection and service to shopping.
Something we believe has been lost.

# EXHIBIT C

Retro Department Stores



| HOME | CONTACT | ABOUT |

JOSEPH MAGNIN | SHOP

Bullock's | SHOP

MAY COMPANY | SHOP

ROBINSONS | SHOP

Jordan Marsh | SHOP

FILENE'S | SHOP

The BROADWAY | SHOP

## Bullock's

Bullock's was founded in 1907 at Seventh & Broadway in downtown Los Angeles by John G. Bullock. In 1944 Bullock's acquired I. Magnin & Co. This was followed by the acquisition of the then public-owned Bullock's/I. Magnin organization in 1964 by Federated Department Stores. In the 1970s, to differentiate itself from the full-line Bullock's stores, the very exclusive Wilshire location dropped its apostrophe, became Bullocks Wilshire, and began its own expansion.

Bullock's, Bullocks Wilshire, and I. Magnin retained their autonomy under Federated, as well as their carriage-trade niche. with I. Magnin expanding into the Chicago and Washington, D.C. metropolitan areas and Bullock's opening stores in Phoenix, Las Vegas and Northern California. In 1983 however, Federated shut the Bullock's North division and sold most of its locations to a Seattle, Washington upstart: Nordstrom. In 1996—following the acquisition of Broadway Stores, Inc.—Federated consolidated all its traditional department-store business in California under the Macy's nameplate, ending 89 years of Bullock's.

Add to Cart

Retro Department Stores







Copyright 2011 :: Retro Department Stores

# EXHIBIT D

Retro Department Stores



HOME   CONTACT   ABOUT

JOSEPH MAGNIN — SHOP
Bullock's — SHOP
MAY COMPANY — SHOP
ROBINSONS — SHOP
Jordan Marsh — SHOP
FILENE'S — SHOP
THE BROADWAY — SHOP

A&S

Add to Cart

## Abraham & Strauss

Abraham & Strauss (or A&S) was a major New York City department
store, based in Brooklyn. Founded in 1865, in 1929 it became part of
Federated Department Stores, which eliminated the A&S brand shortly
after its 1994 acquisition of R.H Macy & Company. Most A&S stores
took the Macy's name, although a few became part of Stern's, another
Federated division that offered lower-end goods than did Macy's or A&S





Retro Department Stores





Copyright 2011 :: Retro Department Stores

12/7/2011

# EXHIBIT E

Retro Department Stores

HOME   CONTACT   ABOUT

SHOP   JOSEPH MAGNIN
SHOP   Bullock's
SHOP   MAY COMPANY
SHOP   ROBINSONS
SHOP   Jordan Marsh
SHOP   FILENE'S
SHOP   the BROADWAY

## Jordan Marsh

Jordan Marsh & Company (or Jordan Marsh) was a department store in Boston, Massachusetts, which grew to be a major regional chain in the New England area of the United States. In 1996, the last of the Jordan Marsh stores were converted to Macy's. The store was formerly part of Allied Stores and then Federated Department Stores (now Macy's, Inc.) Allied also operated a separate group of stores in Florida called Jordan Marsh Florida, which were disbanded in 1991.



Add to Cart

Retro Department Stores









Like: 81 people like this.

Copyright 2011 :: Retro Department Stores

12/7/2011

http://retrodepartmentstores.com/jordanmarsh.html

# Exhibit F

Retro Department Stores



HOME   CONTACT   ABOUT

SHOP — JOSEPH MAGNIN

SHOP — Bullock's

SHOP — MAY COMPANY

SHOP — ROBINSONS

SHOP — Jordan Marsh

SHOP — FILENE'S

SHOP — THE BROADWAY

MAY COMPANY

Add to Cart

## May Company

The Robinsons-May name was created in 1993 when the former middle-to
-low-brow May Company California consolidated with their carriage-trade
corporate sibling JW Robinson's. Both chains had operated exclusively in
Southern California until 1989 when May Department Stores dissolved its
Goldwaters division, based in Scottsdale, Arizona, and apportioned its
Phoenix metropolitan and Las Vegas, Nevada, stores between the still
separate JW Robinson's and May Company California. In 1993 Robinsons
-May absorbed the Tucson-area locations of sister division Foley's, which
were themselves the remains of the former Levy's stores. Robinsons-May
was further consolidated with Portland, Oregon-based Meier & Frank in
2002, which retained its individual nameplate, but merged its primary
headquarters into Robinsons-May's in North Hollywood.

Retro Department Stores









SALE $2199

ORIG. $4399

81 people like this.

Copyright 2011 :: Retro Department Stores

12/7/2011

# Exhibit G

Retro Department Stores





JOSEPH MAGNIN   SHOP

Bullock's   SHOP

MAY COMPANY   SHOP

ROBINSONS   SHOP

Jordan Marsh   SHOP

FILENE'S   SHOP

the BROADWAY   SHOP

HOME   CONTACT   ABOUT

*The* BON MARCHÉ

Add to Cart

## The Bon Marche

The Bon Marché, whose name means "the good deal" or "the good market", was the name chosen for a department store launched in Seattle, Washington, United States, in 1890 by Edward Nordhoff. The name comes from Le Bon Marché, a noted Paris retailer and one of the world's first department stores, founded 40 years earlier. A solid middle-range store, The Bon served largely working-class Seattle well; branches were added in several Northwestern cities. Among them were Spokane, Tacoma, Yakima, Kennewick, Longview, Walla Walla, Olympia, and Bellingham, Washington, and Boise, Idaho. Commonly known to customers as The Bon, the company dropped the Marche from their name in the late 1970s before returning it in the mid-1980s.

The Bon was known for their catchy jingles, such as the following to the tune of "The Banana Boat Song": "Day-o, One Day Sale. One day only at The Bon Marché! Save 20, 30, 40 percent (example savings)! Saturday only at the Bon Marche. Prices are down in every department! Saturday only at the Bon Marché!..." This jingle continued after the name was changed to Bon Macy's, with the appropriate changes.

Retro Department Stores







Bon Marche Commercial

Like    81 people like this.

Copyright 2011 :: Retro Department Stores

http://retrodepartmentstores.com/thebonmarche.html

12/7/2011

# Exhibit H

Retro Department Stores



JOSEPH MAGNIN   SHOP
Bullock's   SHOP
MAY COMPANY   SHOP
ROBINSONS   SHOP
Jordan Marsh   SHOP
FILENE'S   SHOP
The BROADWAY   SHOP

HOME   CONTACT   ABOUT

Add to Cart

## The Broadway

The Broadway was a mid-level department store chain headquartered in Los Angeles, California. Founded in 1896 by English born Arthur Letts, Sr., who later went on to develop Holmby Hills, The Broadway became one of the dominant retailers in Southern California and the Southwest. In 1996 the chain was acquired by Federated Department Stores and the majority of locations were converted to the Macy's nameplate. Several stores in affluent areas where Macy's already had locations were closed, refurbished and reopened as Bloomingdale's, while Federated sold many of the remaining stores to Sears.

Though the chain had been closed for over seven years, The Broadway Building in Hollywood, including its iconic "The Broadway" sign was featured in the climactic final scenes of 2003's Hollywood Homicide movie starring Harrison Ford

Retro Department Stores







Copyright 2011 :: Retro Department Stores

12/7/2011

http://retrodepartmentstores.com/thebroadway.html



Retro Department Stores





## About

We've heard it countless times before... remember the good ole days when it was a treat to shop at our local department store? We miss those details, such as Joseph Magnin's Wolves Den, Jordan Marsh's delicious blueberry muffins, and The Bon Marche's catchy jingle

**Bringing Back Nine Stores**

Now, through Retro Departmentstores.com, we will bring back nine of the great department stores of the 20th century: Joseph Magnin, Bullock's, May, Robinson's May, Jordan Marsh, Filene's, The Broadway, The Bon Marche, and Abraham & Strauss, and re-build and restore these well-loved brands.

**The Plan**

You'll see these stores first as part of this "nostalgic" virtual mall. Then we plan to branch out with unique accessories at small boutiques, followed by exclusive apparel by up and coming designers, and then ultimately with actual "Brick and Mortar" stores throughout the United States with a full line-up of products. We're thrilled to be able to bring back a little part of Americana home so watch this space for more updates!

Like    81 people like this.

http://retrodepartmentstores.com/about.html

12/7/2011

Retro Department Stores

 

Copyright 2011 :: Retro Department Stores