UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACY'S INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>STRATEGIC MARKS, LLC, et al.,<br><br>    Defendants. | Case No. 11-cv-06198-EMC<br><br>Case No. 15-cv-00612-EMC<br><br>**CONSOLIDATED CASES**<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Docket No. 31 (Case No. 15-0612) |

## I.   INTRODUCTION

Plaintiffs Macy's, Inc. and Macys.com, Inc. (collectively, Macy's) filed the instant suit against Defendants Strategic Marks, LLC and Ellia Kassoff (collectively, Strategic Marks), alleging trademark infringement. Macy's originally filed suit against Strategic Marks in 2011, based on Strategic Marks's operation of the website "Retro Department Stores," alleging that Strategic Marks had misappropriated eight Macy's trademarks. In 2015, prior to trial, Strategic Marks modified its home page and began to sell products allegedly misappropriating twelve additional Macy's trademarks. As a result of the expanded infringement, Macy's brought the instant suit.

Macy's now moves for partial summary judgment on eight trademarks. No. 15-612, Docket No. 31 (Mot.).[1] Macy's contends that it owns valid federal trademark registrations for

---

[1] The motion for summary judgment and opposition brief are filed in No. 15-612-EMC. The reply brief is filed in No. 11-6198-EMC. The cases were consolidated on November 18, 2015, after which all future filings were to be filed under No. 11-6198. *See* No. 15-612, Docket No. 41.

each of these eight marks, and that the federal registrations were obtained prior to Strategic Marks selling items bearing these marks on its Retro Department Stores website. Strategic Marks opposes on the grounds that Macy's does not own a valid protectable interest in the trademarks because its use is merely ornamental and does not constitute bona fide commercial use, and because there are questions of fact regarding whether Strategic Marks's use of the trademarks creates confusion. No. 15-612, Docket No. 42 (Opp.) at 9, 15.

Macy's motion for partial summary judgment came on for hearing before the Court on January 21, 2016. At the hearing, Macy's clarified that it sought summary judgment only as to liability on Strategic Marks's sale and offering for sale t-shirts bearing the disputed marks. For the reasons set forth below, the Court **GRANTS** Macy's motion for partial summary judgment.

## II.   BACKGROUND

Macy's is a department store that has owned and operated other regional retail department stores, specifically Abraham & Straus, Bamberger's, The Bon Marché, The Broadway, Bullock's, Burdines, Filene's, Foley's, Goldsmith's, Hecht's, I. Magnin, Jordan Marsh, Kaufmann's, Lazarus, Macy's, Marshall Field's, Meier & Frank, Rich's, Robinsons-May, Stern's, and Strawbridge's. Mot. at 1; *see also* No. 15-612, Docket No. 32 (Lo Cicero Dec.), Exh. C. In 2006, Macy's converted the regional department stores to Macy's stores. Opp. at 4. Macy's refers to the regional department store brands as its "Heritage Marks." Mot. at 1. In July 2011, Macy's created the "Macy's Heritage Shop" on its website, which gave a brief description of each Heritage Mark and offered for sale items -- namely t-shirts and tote bags -- bearing the Heritage Marks. *See* Lo Cicero Dec., Exhs. B, C.

Strategic Marks is a business that revives "zombie" brands, or brands that have been abandoned. *Id.* at 2. In 2010, Strategic Marks submitted trademark applications to the United States Patent and Trademark Office (USPTO) for brands that had previously been converted to Macy's, specifically Abraham & Straus, Filene's, The Broadway, Jordan Marsh, The Bon Marché, Robinson's, Bullock's, and May Company. *See* No. 15-612, Docket No. 43 (Ashurov Dec.), Exh. A. Strategic Marks also began development of its website, retrodepartmentstores.com, which it launched in October 2011. Opp. at 2; Ashurov Dec., Exh. E. Like the Macy's Heritage Shop,

1  Retro Department Stores gives a description of each of the brands, and offers for sale t-shirts
2  branded with the Heritage Marks. *See* Ashurov Dec., Exh. E.
3  In December 2011, Macy's filed suit against Strategic Marks, alleging trademark
4  infringement. No. 11-6198, Docket No. 1. In January 2015, prior to trial, Strategic Marks
5  expanded its website to include an additional twelve Heritage Marks: Marshall Field's, Burdines,
6  Foley's, Goldsmith's, Hecht's, I. Magnin, Kaufmann's, Lazarus, Meir & Frank, Rich's,
7  Strawbridge's, and Stern's. *See* Lo Cicero Dec., Exh. E. The expanded website included the sale
8  of t-shirts bearing these additional Heritage Marks. Based on this expansion, Macy's filed a
9  second suit against Strategic Marks in February 2015. No. 15-612, Docket No. 1.
10 Macy's now moves for partial summary judgment on eight of the twelve disputed marks at
11 issue in the 2015 action. Mot. at 7. Macy's registered trademarks for these eight disputed marks
12 in 2014 or earlier, prior to the expansion of retrodepartmentstores.com to include the sale of t-
13 shirts bearing these marks. *See* Lo Cicero Dec., Exh. F (Marshall Field's registration); Exh. G (I.
14 Magnin registration); Exh. H (Burdines registration); Exh. I (Kaufmann's registration); Exh. J
15 (Lazarus registration); Exh. K (Meir & Frank registration); Exh. L (Rich's registration); Exh. M
16 (Strawbridge's registration).

### III.  DISCUSSION

A.  Standard of Review

The Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252. At the same time, "all reasonable inferences must be drawn in favor of the non-movant." *John v. City of El Monte*, 515 F.3d 936, 941 (9th Cir. 2008).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party

3

1 has the ultimate burden of proof, the moving party may prevail on a motion for summary
2 judgment by pointing to the non-moving party's failure "to make a showing sufficient to establish
3 the existence of an element essential to that party's case." *Id.* at 322. In the context of trademark
4 infringement, summary judgment is generally disfavored "[b]ecause of the intensely factual nature
5 of trademark disputes." *KP Permanent Make-Up, Inc. v. Lasting Impressing I, Inc.*, 408 F.3d 596,
6 602 (9th Cir. 2005).

B.  Trademark Infringement

"A trademark is a limited property right in a particular word, phrase, or symbol." *The New Kids on the Block v. News Am. Pub'g*, 971 F.2d 302, 306 (9th Cir. 1992). The purpose of a trademark is to identify the manufacturer or sponsor of a good or service. *Id.* at 305. Trademark law thus seeks to prevent an infringer from using the trademark to "capitalize on the investment of time, money, and resources of his competitor." *Id.*

In a trademark infringement action, the plaintiff bears the ultimate burden of proof. *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005). To prevail on a trademark infringement claim, the plaintiff must show that: (1) it has a valid, protectable trademark, and that (2) the defendant's use of the mark is likely to cause consumer confusion, such as by "misleading the public to believe that the user is sponsored or approved by the registrant." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983); *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007). Here, the parties dispute whether Macy's has a valid trademark, and whether Strategic Marks's use of the eight marks is likely to cause confusion.

1.  Protectable Interest

The validity of a trademark is a "threshold issue," as "[a] necessary concomitant to proving infringement is, of course, having a valid trademark; there can be no infringement of an invalid mark." *Yellow Cab Co.*, 419 F.3d at 928 (quotation omitted). A protectable trademark can be established where the plaintiff has a federally registered mark in good or services, a descriptive mark that has acquired a secondary meaning in the market, or a suggestive mark that is inherently distinctive and protectable. *Applied Info. Scis. Corp.*, 511 F.3d at 970.

Here, Macy's has registered the eight Heritage Marks at issue for clothing (and for some

Heritage Marks, handbags) on the USPTO's principal register. *See* Lo Cicero Dec., Exhs. F-M. Registration of a mark on the USPTO's principal register is prima facie evidence of a valid trademark. *Applied Info Scis. Corp.*, 511 F.3d at 970. Thus, where a plaintiff pursues a trademark action involving a registered trademark, the burden of proving the invalidity of the trademark falls on the defendant. *Id.* at 970 n.2; *see also Yellow Cab Co.*, 419 F.3d at 927. The defendant can only overcome the registered mark's presumption of validity by showing by a preponderance of evidence that the mark is not protectable. *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1114 (9th Cir. 2010).

Strategic Marks argues raises two argument for why the registered trademarks are invalid: (1) Macy's use of the disputed marks is "merely ornamental," and (2) Macy's use of the disputed marks does not constitute "bona fide commercial use." Opp. at 9.

    a.  Ornamental Use

In general, a designation that is solely "ornamental" cannot be a trademark. *Bobosky v. Adidas AG*, 843 F. Supp. 2d 1134, 1143 (D. Ore. 2011). Rather, a designation must "identify the goods as coming from a certain source and distinguish it from other sources . . . ." *Id.* at 1142 (citing 15 U.S.C. § 1127); *see also In re Expo '74*, 189 U.S.P.Q. 48, 49 (1975). Whether a designation is used as ornamentation has been treated by courts as a question of fact. *Bobosky*, 843 F. Supp. 2d at 1143. However, "[m]erely because a design, symbol, or designation is decorative or ornamental does not mean that it cannot also serve the trademark purpose of identifying the source of the goods that bear it." *Id.* at 1142; *see also Ithaca Indus., Inc. v. Essence Commc'ns, Inc.*, 706 F. Supp. 1195, 1206 (W.D.N.C. 1986). Instead, the Patent Office Trademark Trial and Appeal Board has long held that ornamentation on apparel, including shirts manufactured by third parties, qualify as trademark use if the particular ornamentation serves as an indication of a secondary source of origin, *e.g.*, the source of a shirt other than the direct manufacturer. For example, if a t-shirt with the stylized "Cal" logo was sold, Champion may be the direct manufacturer but the University of California, Berkeley, would be the secondary source that authorized Champion to produce and distribute the shirt bearing the school's registered trademark.

5

1  This principle is illustrated by *In re Olin Corp.*, where the applicant sought to register a
2  stylized "O" for use on t-shirts. 181 U.S.P.Q. 182 (1973). The applicant, Olin Corporation, had
3  previously registered the "O" for use on its skis as a trademark. In finding that the mark could be
4  registered for use on t-shirts, the Board explained:

> It is a matter of common knowledge that T-shirts are "ornamented" with various insignia, including college insignias, or "ornamented" with various sayings such as "Swallow Your Leader". In that sense what is sought to be registered could be construed to be ornamental. If such ornamentation is without any meaning other than as mere ornamentation it is apparent that the ornamentation could not and would not serve as an indicia of source. Thus, to use our own example, "Swallow Your Leader" probably would not be considered as an indication of source.
>
> The "ornamentation" of a T-shirt can be of a special nature which inherently tells the purchasing public the source of the T-shirt, not the source of manufacture but the secondary source. Thus, the name "New York University" and an illustration of the Hall of Fame, albeit it will serve as ornamentation on a T-shirt will also advise the purchaser that the university is the secondary source of that shirt. It is not imaginable that Columbia University will be the source of an N.Y.U. T-shirt. Where the shirt is distributed by other than the university the university's name on the shirt will indicate the sponsorship or authorization by the university.

*Id.* Thus, the Board found that the stylized "O" was an arbitrary symbol that, as used on shirts, served as an identifier of the secondary source, Olin Corporation. *Id.* at 183.

Applying these principles, the Board has since found that marks such as "EXPO '74" and "Mork & Mindy" are protectable trademarks that identify secondary sources because although the mark was "certainly part of the ornamentation," they "also indicate[d] source or origin in the proprietor of the [mark] in the same sense as the stylized 'O' in Olin." *In re Paramount Pictures Corp.*, 213 U.S.P.Q. 1111, 1113 (1982); *In re Expo '74*, 189 U.S.P.Q. at 49 (finding that mark "EXPO '74" could serve a trademark function where it would be conspicuously displayed on the front of the t-shirt because the mark "advises the purchaser that the applicant 'EXPO '74' is a secondary source of that T-shirt."). Thus, unlike the hypothetical example "Swallow Your Leader" in *Olin*, which "plainly would not be perceived by purchasers as serving any source-indicating function," marks such as "Mork & Mindy" "would be and is so perceived." *Id.* at 1115.

In applying these Board decisions, the district courts have usually looked at whether an

6

unregistered (or invalidly registered) mark warrants trademark protection. *E.g.*, *Bobosky*, 843 F. Supp. 2d at 1145-46 (finding that the trademark registration of the phrase "WE NOT ME" was invalid because the plaintiff lacked the bona fide intent to use the phrase on all goods listed in his initial intent-to-use application, but that there was a question of fact as to whether the plaintiff had acquired a valid unregistered trademark).

This Court has found one case where a court determined that a registered trademark was void based on a finding of ornamentation. In *Tovey v. Nike, Inc.*, the plaintiff registered the mark "BOOM YO!" No. 1:12CV448, 2014 WL 3510975, at *1 (N.D. Ohio July 10, 2014). The district court held that the presumption of validity afforded by the registration of the mark was rebutted by the defendants' evidence that the plaintiff did not use the same design, color, font, or font size on all of the items he produced, and that the location of "BOOM YO!", which was prominently displayed, varied from item to item. *Id.* at *9. The plaintiff also did not use "TM" in connection with the phrase. *Id.* Thus, court concluded that the mark was not used to identify the source of the goods because the plaintiff "used the mark -- which consists of a common word -- in different fonts, font sizes, designs, colors and locations on his goods . . . and he did not designate the phrase BOOM YO! as a trademark on the goods." *Id.* In short, the plaintiff's use of the mark "lacked the consistent and repetitive use of a designation as an indicator of source that is the hallmark of a trademark." *Id.* (citation omitted).

*Tovey* is inapposite. Here, in contrast to *Tovey*, the disputed marks are well-known marks that were specifically chosen by Strategic Marks precisely because they are well-known and there remains favorable consumer recollection and feelings towards the brands. *See* Lo Cicero Dec., Exh. P (Kassoff Dep.) at 42:15-20, 43:7-16. Unlike the generic phrases or common words at issue in cases like *Bobosky* ("WE NOT ME") and *Tovey* ("BOOM YO"), the disputed marks are arbitrary terms that have "no other perceived significance" except for source, similar to other arbitrary marks like "Kodak" and "Dreft." *See In re Paramount*, 213 U.S.P.Q. at 1112. Additionally, on the shirts, the marks are followed by "TM," clearly indicating to the consumer that the mark is being used as a trademark. Strategic Marks also presents no evidence that the marks were used in different fonts or designs; instead, they are used in the same font across

7

different products.  *See* Ashurov Dec., Exh. I.

Instead, as explained at the hearing on this matter, Strategic Marks's primary argument is that because Macy's no longer operates the regional brands, the marks have been abandoned and can now be used by any other individual.  Thus, Strategic Marks seems to contend that principles of abandonment should be used to inform consumer perception, *i.e.*, whether a consumer would view the disputed marks purely as ornamental rather than also source-identifying.  However, Strategic Marks admits that it knows of no specific case in which a court has found that as a matter of law, consumers would no longer associate a mark with the source after a store is closed, and the Court could not find any.  *But see In re Expo '74*, 189 U.S.P.Q. at 49-50 (1975 decision finding that the mark "EXPO '74" identified the source of the good, which was a 1974 exposition that had already taken place).

This is not surprising.  Simply because a store has ceased operations does not mean that its proprietor or owner does not maintain a valid interest in the registered trademark of the business.  A trademark can still exist and be owned even after a store closes.[2]  If an accused infringer uses the mark, a consumer may still be confused as to whether the owner of the trademark authorized or licensed the infringer.  *See Burger King Corp.* 710 F.2d at 1492 ("The unauthorized use of a trademark which has the effect of misleading the public to believe that the user is sponsored or approved by the registrant can constitute infringement"); *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012) (the plaintiff's "trademark claim rests on the notion that consumers could be more inclined to do business with [the defendant] because they mistakenly believe that its services are sponsored by or affiliated with [the plaintiff]").   It does not matter whether the public knows the identity of the owner of the mark.  *E.g.*, *Osawa & Co. v. B & H Photo*, 589 F. Supp. 1163, 1179 (S.D.N.Y. 1984) ("It is of little significance to the establishment of trademark rights whether the public can identify correctly by name the owner of the mark"); *Premier Dental Prods. Co. v. Darby Dental Supply Co.*, 794 F.2d 850, 856 (2d Cir. 1986) ("the consuming public need not know of [the trademark owner] by name"); *Nw. Corp. v. Gabriel Mfg.*

---

[2] Although a valid mark may legally be abandoned, 15 U.S.C. § 1127, a claim of abandonment is not asserted here.

*Co.*, Case No. 95-c-2004, 1996 U.S. Dist. LEXIS 19275, at *26 (N.D. Ill. Dec. 10, 1996) ("there is no requirement that a trademark be used in association with the name of the trademark owner"); *Clearly Food & Beverage Co., Inc. v. Top Shelf Beverages, Inc.*, 102 F. Supp. 3d 1154, 1159, 1168 (W.D. Wash. 2015) (analyzing likelihood of confusion where the plaintiff bought the trademark from a company that had filed for bankruptcy, with the intent of reintroducing the product under that trademark).

In arguing the Heritage Marks are only ornamental, Strategic Marks cites the Trademark Manual of Examining Procedures (TMEP), which requires that the examining attorney consider the significance of the proposed mark, as well as the "size, location, and dominance of the proposed mark, as applied to the goods, to determine whether ornamental matter serves a trademark function." TMEP § 1202.03(a). For example, "[a] small, neat and discrete word or design (*e.g.*, small design of animal over pocket or breast portion of shirt) may be likely to create the commercial impression of a trademark, whereas a larger rendition of the same matter emblazoned across the front of a garment (or a tote bag, or the like) may be likely to be perceived merely as a decorative or ornamental feature of the goods." *Id.* However, as pointed out by Macy's, an examining attorney would already have considered these factors in finding that the disputed marks could be registered on the principal registrar, and Strategic Marks presents no factual evidence that a consumer would not believe the mark was source-identifying rather than purely ornamental. The size, location or dominance of the mark as used by the accused infringer is only a factor in assessing whether it is ornamental. *See Bobosky*, 843 F. Supp. 2d at 1145. Where as here the mark is arbitrary and has a well-known association with a source (as here) rather than constituting some generic term without any such association, and particularly where "TM" appears next to the mark or the accused products, the marks are not ornamental.

Finally, Strategic Marks relies on the expert report of Mr. Joe Mendelson, who is acting as a "branding expert." Ashurov Dec., Exh. O (Mendelson Report) at ¶ 7; Opp. at 11-12.[3] With

---

[3] Macy's has requested, although not formally moved, that Mr. Mendelson's report be stricken as inadmissible hearsay and comprised of improper legal conclusions. The Court will not strike Mr. Mendelson's report at this juncture, although the weight to be given it will be limited, as further discussed below.

9

respect to ornamentation, Mr. Mendelson opines that "[t]here is no connection in the consumers' mind between the token use of the old store marks on souvenirs or promotional items such as 'totes and T's,' with what once were grand businesses and retail platforms that were vibrant and engaging parts of their communities." *Id.* at ¶ 40. However, the report establishes no basis for this opinion or how Mr. Mendelson came to this conclusion; there is no indication that he spoke to any consumer about the specific marks or products at issue. Moreover, Mendelson acknowledges the Heritage Marks are strong and that consumers are well familiar with the stores that were affiliated with the marks. *See id.* at ¶ 41 ("Some consumers still remember the old history of the stores and their personal experiences at the old retail department stores that used to operate under the nameplates at issue in this case, and many even still feel nostalgia for these stores as they existed in their heyday."). More importantly, Mr. Mendelson fails to address the proper legal standard. He does not address and hence does not deny that consumers may still be confused about whether the use of the marks by Strategic Marks were authorized or licensed by the secondary source – the actual owner or registrant of the marks. Mr. Mendelson's report fails to create a genuine issue of material fact as to whether Macy's has a protectable interest in the disputed marks.

Thus, the marks at issue are not purely ornamental, but well-known, strong marks that indicate a source, as emphasized by the use of "TM" on the shirts immediately following the marks.

        b.        <u>Use in Commerce</u>

Strategic Marks next argues that the registered trademarks are invalid because the disputed marks are not used in commerce. As defined by the statute, the term "use in commerce" requires "bona fide use of the mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. For purposes of the statute, a mark is deemed to be used in commerce on goods when: "(A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto . . . and (B) the goods are sold or transported in commerce." *Id.*; *see also Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1159 (9th Cir. 2001) ("the 'use in commerce' requirement includes (1) an element of actual use, and (2)

10

an element of display.")

There can be no real question that Macy's offers products displaying the disputed trademark for commercial sale on its website, and Strategic Marks presents no real evidence to the contrary. Instead, Strategic Marks argues that the Court should apply a "totality of the circumstances test" to determine whether the disputed marks are adequately used in commerce. Opp. at 12. However, the totality of circumstances test is typically used to determine if protection to a particular trademark exists *prior* to actual sales. *See Rearden LLC*, 683 F.3d at 1203 n.5 (explaining that "protection prior to actual sales may arise where the totality of the circumstances establishes a right to use the trademark"); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999) ("we have indeed held that trademark rights can vest even before any goods or services are actually sold if the totality of one's prior actions, taken together, can establish a right to use the trademark") (internal citations and modifications omitted); *Chance*, 242 F.3d at 1158 (explaining that the Ninth Circuit had previously found that "the totality of the appellee's acts, prior to its first sale, was sufficient to show adoption of its mark and use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind.") (internal citations and modifications omitted). Thus, "even if a party completes the initial sale of its services only after its opponent has done so, that party still could establish prior use of the contested mark based on its prior non-sales activities." *Rearden LLC*, 683 F.3d at 1206.

Here, Strategic Marks does not argue that based on the totality of the circumstances test, it used the disputed marks prior to Macy's. Instead, Strategic Marks argues that the Court should apply the totality of circumstances test to find that Macy's *actual* sales activities are not genuine. It cites no authority for applying the totality of the circumstances test to this circumstance. Even if the totality of the circumstances test could be applied, Strategic Marks provides no evidence to support its claim, such as sales figures or a showing that the products sold on the Heritage Shop website have never in fact been available for sale. The Court finds there is no genuine factual dispute as to whether the disputed marks were used in commerce, and concludes that Macy's has a protectable interest in the disputed marks.

2. <u>Likelihood of Confusion</u>

Because the Court finds that Macy's marks are valid, the Court must look next to whether Strategic Marks's use of the disputed trademarks creates a "likelihood of confusion." "The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden LLC*, 683 F.3d at 1209. "[A] plaintiff must show more than simply a possibility of such confusion." *Id.* In the Ninth Circuit, the courts usually look at the eight *Sleekcraft* factors: (1) strength of the mark, (2) proximity of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) type of goods and the degree of care likely to be exercised by the purchaser, (7) defendant's intent in selecting the mark, and (8) likelihood of expansion of the product lines. *Id.* (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003)). This multi-factor test "must be applied in a flexible fashion, [as t]he *Sleekcraft* factors are intended to function as a proxy or substitute for consumer confusion, not a rote checklist." *Id.* Thus, "[a] determination may rest on only those factors that are most pertinent to the particular case before the court, and other variables besides the enumerated factors should also be taken into account based on the particular circumstances." *Id.*

a. <u>Strength of the Marks</u>

The parties dispute the strength of the disputed marks. The strength of a disputed mark is based on whether the mark is "inherently distinctive;" thus, "an arbitrary or fanciful mark . . . will be afforded the widest ambit of protection from infringing uses," as compared to marks that are descriptive or suggestive. *Sleekcraft*, 599 F.2d at 349.

The Court finds that the disputed marks are strong. The marks are arbitrary, rather than descriptive or suggestive or the products being sold, and would likely be considered an indication of the product's source. *See id.* Further, even Strategic Marks admits that the marks are strong, as it specifically chose the disputed marks because they are well-known. *See* Kassoff Dep. at 43:7-12. This factor weighs in favor of finding a likelihood confusion.

12

### b. Proximity of the Goods

The proximity of the goods looks at how related the goods are; "[f]or related goods, the danger presented is that the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists. The more likely the public is to make such an association, the less similarity in the marks is requisite to a finding of likelihood of confusion." *Sleekcraft*, 599 F.2d at 350 (citation omitted).

Here, the goods are related because both the authorized trademarked goods sold by Macy's and the unauthorized goods sold by Strategic Marks are t-shirts emblazoned with the disputed marks. While Strategic Marks argues that the types of goods offered are "quite different" because its ultimate goal is to "provide online retai[l] store services, not sell t-shirts," it is undisputable that Strategic Marks is in fact currently offering t-shirts branded with the disputed marks for sale on its website. *See* Ashurov Dec., Exh. F. Because there is no real dispute that the goods are closely related, this factor weighs in favor of finding a likelihood of confusion.

### c. Similarity of the Marks

Similarity of the marks looks at the "sight, sound, and meaning," of the marks. *Sleekcraft*, 599 F.2d at 351; *Rearden LLC*, 683 F.3d at 1211. Any similarities should be weighed more heavily than differences. *Id.* Here, the parties do not and cannot dispute that the marks are exactly the same. *See* Mot. at 15-17. This factor therefore weigh heavily in favor of finding a likelihood of confusion.

### d. Evidence of Actual Confusion

Macy's has not presented evidence of actual confusion. However, the Ninth Circuit has found that while "[e]vidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely," "[b]ecause of the difficulty in garnering such evidence, the failure to prove instances of actual confusion is not dispositive." *Sleekcraft*, 599 F.2d at 352-53. Thus, "this factor is weighed heavily only when there is evidence of past confusion or, perhaps, when the particular circumstances indicate such evidence should have been available." *Id.* at 353.

Strategic Marks presents as evidence Mr. Mendelson's report, in which he opines that confusion is unlikely because Macy's shut down the regional department stores, so consumers are

unlikely to believe that Macy's is now reopening the department stores. Mendelson Report at ¶¶ 51-52. But as noted above, the fact that the regional departmental stores affiliated with the Heritage Marks are closed does not invalidate the registrability and enforceability of the marks. Consumers may still be confused as to whether the alleged infringing goods are authorized by and affiliated with the owner or registrant of the mark. As noted above, Mr. Mendelson's report is not evidence sufficient to create a genuine dispute of material fact. Strategic Marks also argues that is has made no sales and generated no revenue through the use of the disputed marks. Opp. at 16. However, the fact that Strategic Marks has not yet sold any products is not evidence that consumers are unlikely to be confused. The Court finds that this factor is neutral as to whether there is a likelihood of confusion.

e.  Marketing Channels

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft*, 599 F.2d at 353. Here, the products are both sold on-line, although on different websites. This factor weighs very slightly in favor of likelihood of confusion, as the Ninth Circuit has recognized that "[t]oday, it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1151 (9th Cir. 2011); *see also Playboy Enters. v. Netscape Commcn's Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004) (noting that the marketing channels factor is "equivocal" where the parties both used the Internet because "[g]iven the broad use of the Internet today, the same could be said for countless companies. Thus, this factor merits little weight.").

f.  Type of Goods and Purchaser Care

"Likelihood of confusion is determined on the basis of a 'reasonably prudent consumer.'" *Brookfield Commc'ns, Inc.*, 174 F.3d at 1060. The "reasonably prudent consumer" is dependent on the circumstances; such a consumer is expected "to be more discerning - and less easily confused - when he is purchasing expensive items, and when the products being sold are marketed primarily to expert buyers." *Id.* (citation omitted). "On the other hand, when dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more

14

1 likely." *Id.*; *see also E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992) (finding no clear error where district court found that consumers tend to exercise less care when purchasing wine and cheese).

Here, the products at issue are relatively inexpensive. For example, a Marshall Field's t-shirt on the Macy's site is $24.00, while the same shirt on Retro Department Stores is $29.99. *See* Ashurov Dec., Exh. N. Given the low prices, it is unlikely that consumers would exercise much care in determining whether the shirt is licensed or not, thus making confusion more likely.

Strategic Marks argues that it has a disclaimer on Retro Department Store's homepage, stating that the website is "not affiliated with any of the former owners/users of the trademarks referenced on this website." Opp. at 16; *see also* Lo Cicero Dec., Exh. E. However, it produces no evidence that this disclaimer, in relatively small font compared to the remainder of the homepage, is or would be effective. *See HBO, Inc. v. Showtime/The Movie Chanel, Inc.*, 832 F.2d 1311, 1315-16 (2d Cir. 1987) (requiring the infringing user "to demonstrate the effectiveness of proposed disclaimers," and noting that many academics "have concluded that disclaimers are frequently not effective"); *Toho Co., Ltd. v. William Morrow & Co., Inc.*, Case No. CV 98-0925 DT (Mcx), 1998 U.S. Dist. LEXIS 11920, at *8-9 (C.D. Cal. Apr. 15, 1998) ("In the case of disclaimers, the infringer has an affirmative duty to come forward with evidence sufficient to demonstrate that the proposed material would significantly reduce the likelihood of consumer confusion") (citation omitted). Furthermore, even assuming that anyone reads the disclaimer, the disclaimer only states that the website is not affiliated with *former* owners of the trademarks; this disclaimer still fails to inform consumers that the website is entirely unaffiliated with *current* owners of the mark, who in this case is Macy's. Given the low price point and the lack of any evidence that the disclaimer is effective, this factor weighs in favor of finding a likelihood of confusion.

        g.    <u>Intent</u>

The Ninth Circuit has found that "[w]hen the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354. Here, the evidence shows that

Strategic Marks specifically chose the disputed marks at issue because consumers still hold strong feelings for the brands. Kassoff Dep. at 43:7-12. Furthermore, given that there was an ongoing suit involving the same parties, there is no real question that Strategic Marks' decision to expand its allegedly infringing activity was deliberate. Thus, this factor weighs in favor of finding a likelihood of confusion.

### h. Likelihood of Expansion

Finally, "a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354. Furthermore, "[w]hen goods are closely related, any expansion is likely to result in direct competition." *Id.* Here, Strategic Marks has stated that it intends to expand its business to sell products other than shirts. Opp. at 16. This suggests a likelihood of other direct competition in the future, further supporting a finding of likelihood of confusion.

### i. Finding of Likelihood of Confusion

In sum, there is no genuine issues of material fact with respect to any of the *Sleekcraft* factors, most of which support a finding of likelihood of confusion and the remainder of which are neutral. Because Strategic Marks's infringing activity consists of the deliberate sale of the same product sold by Macy's (t-shirts), bearing the same exact mark, and sold at a relatively inexpensive price which likely results in limited consumer care, the Court finds that there is a high likelihood of confusion, and thus grants Macy's motion for partial summary judgment.

///
///
///
///
///
///
///
///
///

16

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Macy's motion for partial summary judgment. The Court finds as a matter of law that Macy's has a protected interest in the registered trademarks, and that there is a high likelihood of confusion based on Strategic Marks's use of the same exact mark on the same products.

This order disposes of Docket No. 31.

**IT IS SO ORDERED**.

Dated: February 1, 2016

_____
EDWARD M. CHEN
United States District Judge